FILED

2008 Dec-29  PM 05:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# N THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **HANNIBAL SONNY CRUMPLER** ) | |
| ) | |
| **Movant/Defendant** ) | |
| ) | |
| **v.** ) | **2:08-cv-8042-VEH-JEO** |
| ) | **2:04-cr-0502-VEH-JEO** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| ) | |

## MEMORANDUM OPINION

Hannibal Sonny Crumpler (hereinafter the "defendant") initiated the present action on October 8, 2008, by filing a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. (CV Doc. 1).[1] He also contemporaneously filed a "motion to reduce sentence" pursuant to 28 U.S.C. §§ 2255 and § 2241. (CV Doc. 2).[2] In those motions, the defendant claims that, based on comparisons to sentences received by other defendants convicted at trial of corporate securities fraud, he is entitled an 18-to-24-month reduction in his 96-month sentence, or at least to

---

[1] References to "Doc. ___" are to the documents as numbered by the Clerk of the Court in the Court's record in this case. The pleadings from the original criminal case, which is case number 2:04-cr-0502-VEH-JEO, are designated as "CR Doc. ___," while the pleadings in the civil case seeking to vacate pursuant to 28 U.S.C. § 2255, which is case number 2:08-cv-8042-VEH-JEO, are designated as ("CV Doc. ___").

[2] Although CV Doc. 2 is captioned as a separate "Motion to Reduce Sentence Pursuant to 28 U.S.C. 2241 and 2255," CV Doc. 1, *i.e.*, the "Motion Under 28 § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," refers to CV Doc. 2 as merely a "Memorandum" providing "further detail and argument" on the claim set forth in CV Doc. 1. (*See* CV Doc. 1 at ¶ 12(a)).

serve the final 12 months of his sentence in home confinement. The United States

has filed a response in opposition (CV Doc. 4), and the defendant has filed a reply

(CV Doc. 6). Upon consideration of the defendant's arguments and the government's

response thereto, the court finds that the defendant's motions are due to be denied and

that this action is due to be dismissed with prejudice.

## I.    BACKGROUND

The defendant was indicted for conspiracy to commit securities fraud and

making false statements to auditors, pursuant to 15 U.S.C. §§ 78j(b), 78ff, 78m(a) &

(b)(2), 18 U.S.C. §§ 2, 371, and 17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13b2-2(a),

and for forfeiture, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). (*See* CR

Doc. 87). These charges arose out of the defendant's participation in a prominent

accounting fraud scheme at HealthSouth Corporation. ("HealthSouth"). The Eleventh

Circuit summarized that scheme as follows:

> At some point in the early to mid-1990s, HealthSouth officials
> realized that HealthSouth's financial results were failing to produce
> sufficient earnings-per-share to meet the expectations of Wall Street
> analysts. Various HealthSouth officials ... became aware that the
> earnings shortfall created a substantial risk that, unless the
> earnings-per-share were artificially inflated, the earnings would fail to
> meet analyst expectations, and the market price of HealthSouth's
> securities would decline.
>
> Therefore, from at least 1994 until March 2003, a group of
> HealthSouth officials "conspired to artificially inflate HealthSouth's

2

reported earnings and earnings per share, and to falsify reports about HealthSouth's overall financial condition." [*United States v. Martin*, 455 F.3d 1227, 1230 (11th Cir. 2006)].  The officials "made, and directed accounting personnel to make, false and fraudulent entries in HealthSouth's books and records for the purpose of falsely reporting HealthSouth's assets, revenues, and earnings per share and in order to defraud investors, banks, and lenders."  *Id.*

*United States v. Livesay*, 525 F.3d 1081, 1085 (11th Cir. 2008); *see also United States v. Owens*, 464 F.3d 1252 (11th Cir. 2006); *Martin*, 455 F.3d at 1230-31; *United States v. McVay*, 447 F.3d 1348, 1349-40 (11th Cir. 2006).  The defendant pled "not guilty" to the charges against him, and the case went to trial beginning November 7, 2005.

The evidence at trial supported the following: From 1986 through July 2000 when he left the company, the defendant, an accountant with an MBA, worked at HealthSouth in various capacities, including as a Senior Vice President beginning in 1997.  From 1992 until July 2000, he was the Controller of the Outpatient-Rehabilitation Division, one of five divisions within the company.  Testimony from four former HealthSouth executives established that beginning in at least 1996 and continuing until July 2000, the defendant actively participated in the massive accounting fraud by assisting in quantifying the company's shortfalls and in figuring ways to make up the differences so that the company's earnings would appear to meet Wall Street's expectations.  The defendant attended secret quarterly meetings with

other co-conspirators at which "first run" reports of the company's finances were reviewed and discussions were held regarding how earnings could be inflated in HealthSouth's public disclosures.  The defendant's role in the scheme included advising the accountants regarding the amount of fake revenue that could be absorbed by his division and identifying facilities therein to which a portion of the false entries to HealthSouth's books could be assigned.  The defendant was also shown to be aware that other conspirators performed similar tasks during the meetings for their respective areas of responsibility within the company.  The accounting staff would then proceed to make the false entries, enhancing the apparent bottom line of the company in its public disclosures.

The evidence further showed that, in July 2000, the defendant left HealthSouth to become the Chief Financial Officer for Source Medical Solutions, Incorporated ("Source Medical"), a company started by HealthSouth and certain of its employees to market computer software used in connection with physical therapy.  When the defendant left, he did not take action that would amount to a withdrawal from the conspiracy, but he was no longer an active participant until March 2002.  At that time, he discussed the continuing fraud with a HealthSouth executive, Weston Smith, and the defendant agreed to confirm a Source Medical receivable to HealthSouth auditors that the defendant knew was falsely inflated by approximately $20 million.  On

November 18, 2005, the jury found the defendant guilty of both conspiracy to commit securities fraud and making false statements to auditors, and it subsequently returned a forfeiture verdict in the amount of $1,398,250.00.

After receiving the Presentence Investigation Report (CR Doc. 134), as well as briefs and documentary evidence relevant to sentencing issues from both the defendant and the government (*see* CR Docs. 131, 132, and 133), the court held a sentencing hearing on June 15, 2006. (*See* CR Doc. 142). At that hearing, the prosecution presented an expert witness who testified that the total loss to HealthSouth's stockholders and bondholders resulting from the fraudulent scheme was approximately $7 billion. (CR Doc. 142 at 29). At the hearing, the court accepted the methodology employed by the government's expert as reasonable, and concluded that the total loss could be ascribed to the defendant for purposes of the United States Sentencing Guidelines (the "Guidelines") because such loss was foreseeable to the defendant insofar as he was aware not only of his own fraudulent conduct but also that of his co-conspirators who were likewise engaged in creating false revenue numbers in their respective divisions within HealthSouth. (*Id.* at 81-85). The court determined that the Guidelines specified a sentence of imprisonment of 180 months, or 15 years, for the two counts upon which the jury convicted the defendant. (CR Doc. 142 at 105). Ultimately, however, the court recognized that,

post-*Booker*,[3] the Guidelines are now advisory only (*see id.* at 77), and the court sentenced the defendant to a term of imprisonment of 96 months, or eight years.  (*Id.* at 130).[4]   In so doing, the court considered each of the sentencing factors set forth at 18 U.S.C. § 3553(a),[5] including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  The court recognized that numerous people were involved in the fraudulent conspiracy at HealthSouth and that the defendant was not "the most culpable person."  (CR Doc. 142 at 89).  Indeed, the court acknowledged that "the defendant was not the leader or even in the second or third tier of leadership."  (*Id.* at 88).  Nonetheless, the court found that the defendant was "a leader" and was "actively involved" in the conspiracy for many years and that "the scope of criminal activity undertaken by him was significant," that is, more than "minor" as that term is used in the Guidelines.  (*Id.* at 88-89).  The court also specifically considered and discussed the sentences imposed upon numerous other

---

[3]*United States v. Booker*, 543 U.S. 220 (2005).

[4]The court entered an order of judgment formalizing the sentence on June 21, 2006.  (CR Doc. 136).

[5]"The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the Sentencing Guidelines range; (5) pertinent policy statements of the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; (7) and the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a)(1)-(7)."  *United States v. Brown*, 526 F.3d 691, 708 n.18 (11th Cir. 2008).

HealthSouth co-conspirators[6] as well as upon a host of defendants convicted in other accounting/investor fraud cases,[7] in light of the legitimate considerations that still may justify sentencing disparities, such as rewards for accepting responsibility for wrongdoing and cooperating with the prosecution.  (*Id.* at 93-104; *see also id.* at 132). The defendant did not object at trial to the sentence imposed.  (*Id.* at 134).

The defendant appealed his conviction to the United States Court of Appeals for the Eleventh Circuit, but he did not contest his sentence or the procedure by which the court determined it.  *See United States v. Crumpler*, 229 Fed. Appx. 832, 2007 WL 1095136 (11th Cir. 2007).  The Eleventh Circuit affirmed the judgment of this court, *id.*, and the defendant filed a petition for a writ of certiorari, which was denied. *Crumpler v. United States*, ___ U.S. ___, 128 S.Ct. 422 (2007).  The defendant then returned to this court, where he filed a motion for a new trial under Rule 33, FED. R. CRIM. P., based upon his alleged discovery of new evidence.  (CR Doc. 163).  That motion was denied.  (*See* CR Docs 167 & 168).  The defendant now has filed his

---

[6]Other defendants involved in the HealthSouth conspiracy whose cases were considered by the court at the defendant's sentencing hearing included the following: William Owens, Weston Smith, Michael Martin, Malcolm McVay, Aaron Beam, Kenneth Livesay, Emery Harris, Cathy Edwards, Rebecca K. Morgan, Angela Ayers, Virginia Valentine, Jason Brown, Will Hicks, Richard Botts, and Catherine Fowler.  (*See* CR Doc. 142 at 100-04).

[7]Defendants in other investor fraud cases mentioned by the court included the following: in the WorldCom cases, Bernard Ebbers, Scott Sullivan, David F. Myers, Buford Yates, Troy Normand, and Betty Vinson; in the Enron cases, Kenneth Lay, Jeff Skilling, Andrew Fastow, Ken Rice, Ben Glissan, James Brown, and Daniel Bayly; in the Adelphia cases, John Rigas and Timothy Rigas; in the Dynegy cases, Jamie Olis and Gene Foster; in the El Paso Gas Traders case, Todd Geiger; in the Rite Aid cases, Martin Grass, Franklin Brown, Franklyn Bergonzi, Eric Sorkin, and Timothy Noonan; in the Tyco cases, Dennis Kozlowski, and Mark Swartz.  The court also considered the case of Charles Walker, a Georgia state senator sentenced for fraud. (*See* CR Doc. 142 at 93-100).

7

instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §

2255 (CV Doc. 1), as well as a "motion to reduce sentence," filed pursuant to 28

U.S.C. §§ 2241 and 2255 (CV Doc. 2).

## II.  DISCUSSION

### A.  The Defendant's Claim

The defendant's pending *pro se* motions assert but one claim.  Namely, they

ask the court to reduce the defendant's sentence by 18 to 24 months, or, in the

alternative, to allow the final 12 months of his sentence to be served in home

confinement, based upon a reconsideration of the sentence to avoid alleged

"unwarranted sentence disparities" under 18 U.S.C. § 3553(a)(6).  Specifically, the

defendant urges that shorter sentences were imposed upon several individuals

convicted at trial in other investor fraud cases that involve conduct that he alleges is

comparable to his determined level of involvement in the fraud at HealthSouth.  The

defendant asserts that the court "specifically declined to compare Defendant's

sentence with the sentences of other's (sic) involved in the HealthSouth conspiracy,"

on the ground that all other such convicted defendants had pleaded guilty while only

the defendant had gone to trial.  (CV Doc. 2 at 2).  Rather, the defendant maintains

that the court "focused on ... defendants who had been convicted of white collar

crimes after going to trial."  (*Id.*).  But "most all" of these other defendants, says the

defendant, "were very high level officers with high degrees of responsibility, accountability and therefore culpability," resulting in sentences of six to twenty-five years. (*Id*.).   The defendant asserts that, since his sentencing, he "has learned of multiple cases in which mid level individuals (such as the Court found him to be) who also went to trial, were found guilty and were sentenced to significantly less time that [h]e was." (*Id.* at 3).  In his motion to reduce sentence, the defendant specifically references sentences imposed upon eight other individuals, whom the defendant describes as follows:

> (1) Dan Boyle, - Vice President Enron, sentenced to 46 months; Merrill Lynch Vice Presidents involved in the Enron case (2) William Fuhs sentenced to 37 months, (3) Robert Furst, sentenced to 37 months, (4) Daniel Bayly 30 months, and (5) James Brown 46 months; (6) Jamie Olis - mid level officer at Dynegy re-sentenced to 72 months; (7) Michelle Valencia and (8) Greg Singleton - energy traders for Dynegy received sentences of 57 and 28 months respectively.

(*Id*. (parenthetical material added)).  The defendant accordingly contends that the court "compared him to an incorrect set of white collar criminals," such that his original sentence "did not promote nationwide uniformity in sentencing," but, rather, "created an anomaly in sentencing."  (CV Doc. 2 at 3).

### B.     Is the Claim Cognizable under 28 U.S.C. § 2255?

The  government  first  argues  that  the  defendant's  claim  does  not  raise  a

9

constitutional violation and is not cognizable under 28 U.S.C. § 2255.  That section

provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the
> sentence was imposed in violation of the Constitution or laws of the
> United States, or that the court was without jurisdiction to impose such
> sentence, or that the sentence was in excess of the maximum authorized
> by law, or is otherwise subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  In *Lynn v. United States*, 365 F.3d 1225 (11th Cir. 2004), the

court addressed the types of post-conviction claims that may be brought pursuant to

§ 2255 as follows:

> Courts have long and consistently affirmed that a collateral
> challenge, such as a § 2255 motion, may not be a surrogate for a direct
> appeal. *See, e.g., United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct.
> 1584, 1593, 71 L.Ed.2d 816 (1982) (collecting cases).   Because
> collateral review is not a substitute for a direct appeal, the general rules
> have developed that: (1) a defendant must assert all available claims on
> direct appeal, *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir.
> 1994); and (2) "[r]elief under 28 U.S.C. § 2255 'is reserved for
> transgressions of constitutional rights and for that narrow compass of
> other injury that could not have been raised in direct appeal and would,
> if condoned, result in a complete miscarriage of justice.' " *Richards v.
> United States*, 837 F.2d 965, 966 (11th Cir. 1988) (quoting *United States
> v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sep. 1981)).
> Accordingly, a non-constitutional error that may justify reversal on
> direct appeal does not generally support a collateral attack on a final
> judgment, *Frady*, 456 U.S. at 165, 102 S.Ct. at 1593, unless the error (1)
> could not have been raised on direct appeal and (2) would, if condoned,
> result in a complete miscarriage of justice. *Stone v. Powell*, 428 U.S.

465, 477 n. 10, 96 S.Ct. 3037, 3044 n. 10, 49 L.Ed.2d 1067 (1976).

365 F.3d at 1232-33 (footnotes omitted); *see also Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998).

The defendant asserts that he is due a reduction in his sentence based upon a re-examination of the "unwarranted sentence disparities" factor of 18 U.S.C. § 3553(a)(6), in light of the sentences imposed upon several defendants in other cases. On its face, this claim does not challenge this court's jurisdiction to impose sentence. Nor does the defendant present argument or evidence that might allow a finding that any alleged sentencing disparity amounted to a constitutional violation. *See McClesky v. Kemp*, 481 U.S. 279, 312-13 (1987) ("Apparent disparities in sentencing are an inevitable part of our criminal justice system" and do not necessarily violate the Constitution); *United States v. Satterfield*, 743 F.2d 827, 841 (11th Cir. 1984) ("disparate treatment of similarly situated individuals at sentencing is not constitutionally impermissible").

Because the defendant's claim is neither jurisdictional nor constitutional in dimension, it is only cognizable under § 2255 if the claim could not have been raised on direct appeal and the

alleged error, if condoned, would result in a "complete miscarriage of justice." *Lynn*, 365 F.3d at 1233.  On the first element, the defendant could have asserted on appeal

that his sentence was excessive based upon this court's alleged misapplication of the unwarranted sentence disparities factor of § 3553(a)(6), but he did not do so. Likewise, on the second element, considering all of the circumstances, the court cannot say that any alleged misapplication of the "unwarranted sentence disparities" factor set forth § 3553(a)(6) was fundamentally unfair or constituted a miscarriage of justice sufficient to form the basis for collateral relief under 28 U.S.C. § 2255.  This court's sentencing decision was based upon a weighing of all of the § 3553(a) factors, and it is within the court's discretion to decide how much weight to give each of those individual factors.  *See United States v. Williams*, 526 F.3d 1312, 1323 (11th Cir. 2008); *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007).  Further, counsel for the defendant raised, in both legal memoranda and at the hearing, substantial arguments regarding all of the § 3553(a) factors, including specifically arguments regarding allegedly unwarranted sentence disparities with other defendants, in both the HealthSouth cases and other fraud cases. (*See* CR Doc. 131 at 24-28; CR Doc. 142 at 108-109, 120-122).  These arguments were fully considered by the court. (*See* CR Doc. 142 at 93-104, 132).  Finally, this court's weighing of all of the § 3553(a) factors in the defendant's particular case resulted in a sentence that was approximately 53% of the term specified by the Guidelines.  Accordingly, the court concludes that the defendant's claim does not implicate fundamental unfairness or a

miscarriage of justice as required to be cognizable under § 2255.[8]  *Cf. Burke*, 152 F.3d at 1331-32 (claim that sentence was contrary to subsequently enacted clarifying Guidelines amendment did not constitute a miscarriage of justice cognizable under § 2255); *United States v. Stossel*, 348 F.3d 1320, 1322 n.2 (11th Cir. 2003) (district court's alleged improper calculation of Guideline sentence would not be cognizable under § 2255); *United States v. Lloyd*, 484 F. Supp. 2d 1232, 1240 (S.D. Ala. 2007) (section 2255 does not authorize a district court to re-sentence a defendant based upon post-sentencing rehabilitative endeavors that might otherwise bear upon an assessment of the § 3553(a) factors); *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir. 1983) ("[A]lthough the sentencing process may be reviewed by the district court on a § 2255 motion, the severity of a sentence within statutory limits may not be reviewed because it raises no constitutional or statutory question"); *Entrekin v. United States*, 508 F.2d 1328, 1330 (8th Cir. 1974) (a claim of disparate sentencing is not cognizable in a § 2255 motion).

---

[8]The court notes that the defendant's "motion to reduce" sentence, although asserting the same claim as his § 2255 motion to vacate, set aside or correct his sentence, is captioned as having been brought "pursuant to" both "28 U.S.C. § 2241 and § 2255." (CV Doc. 2 at 1).  28 U.S.C. § 2241 is the general habeas statute.  *See Medberry v. Crosby*, 351 F.3d 1049, 1055 (11th Cir. 2003).  For the reasons stated in the text, the defendant's non-constitutional claim is not cognizable under § 2255.  Moreover, a prisoner collaterally attacking his conviction or sentence may not avoid the various procedural restrictions imposed on § 2255 motions by nominally bringing suit under § 2241. *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1351 (11th Cir. 2008); *Darby v. Hawk-Sawyer*, 405 F.3d 942, 945 (11th Cir.2005); *Medberry*, 351 F.3d at 1056-57.  While persons challenging detention that is not pursuant to a judgment or challenging the execution of their sentence may seek habeas relief directly under § 2241, a federal prisoner like the defendant here who seeks to collaterally attack a conviction or sentence must satisfy the procedural requisites of § 2255.  *Antonelli*, 542 F.3d at 1351.  Accordingly, the court concludes that the defendant's claim is not cognizable under § 2241 either.  *See Coloma v. Holder*, 445 F.3d 1282, 1285 n.4 (11th Cir. 2006) (recognizing that § 2241 does not authorize re-examination of the length of a federal sentence).

## C.     Procedural Default

The court also agrees with the government that the defendant's claim has been procedurally defaulted, even assuming it is cognizable under § 2255.  "Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding."  *Lynn*, 365 F.3d at 1234.  A defendant can avoid a procedural bar only by establishing one of two exceptions.  *Id.*  "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal and actual prejudice from the alleged error."  *Id.*  "Under the second exception, a court may allow a defendant to proceed with a § 2255 motion despite his failure to show cause for procedural default 'if a constitutional violation has probably resulted in the conviction of one who is actually innocent.'"  *Id.*, 365 F.3d at 1234-35 (quoting *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986))).

The defendant concedes he did not argue to this court or to the Eleventh Circuit that the sentence imposed upon him is excessive because it reflects unwarranted disparities relative to others with similar records, in contravention of 18 U.S.C. § 3553(a)(6).  Indeed, it is undisputed that he did not object to his sentence at the trial level and that he did not challenge his sentence on direct appeal.  Further, the

defendant does not offer any evidence establishing his "actual innocence," as that phrase has been narrowly construed in this context. *See Lynn*, 365 F.3d at 1235 n.18. Accordingly, the court's focus turns to whether the defendant has shown cause and prejudice for his failure to raise his claim at trial and on direct appeal.

The defendant seems to offer two reasons for his failure to raise his claim at trial or on appeal.  First, he asserts that his lawyers at trial and on appeal were constitutionally ineffective (a) for failing to argue for a lesser sentence under § 3553(a)(6) based on sentences given to allegedly more comparable defendants and (b) for failing to object to this court's consideration of "skewed data" in the form of sentences given in other cases to "the very highest level executives with the highest level of responsibility, accountability and culpability."  (CV Doc. 6 at 4-6; *see also* CV Doc. 1 ¶ 12(b)(2) (stating that his "[c]ounsel did not advise to" argue his § 3553(a)(6) claim on appeal)).  And second, the defendant says that "additional comparable cases had not been finalized," (CV Doc. 1 ¶ 12(b)(2)), thus suggesting that the sentences in those other cases could not have been brought to the attention of this court at sentencing, regardless of the adequacy of his counsel's performance. The court concludes that neither excuse is availing, for the reasons explained below.

To the extent that the defendant blames his counsel for not raising this issue at trial or on direct appeal, attorney error is cause for a procedural default only if the

error rises to the level of constitutionally ineffective assistance of counsel under

*Strickland v. Washington,* 466 U.S. 668, (1984).  *See Eagle v. Linahan*, 279 F.3d 926,

937 (11th Cir. 2001).  The Eleventh Circuit has explained:

> To obtain relief under *Strickland,* [a defendant] must show (1) counsel's performance was deficient and (2) that deficiency prejudiced him. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.  Counsel's performance is deficient when it falls "below an objective standard of reasonableness," *Chandler v. United States,* 218 F.3d 1305, 1312 (11th Cir. 2000), which means that it is "outside the wide range of professionally competent assistance," *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.  Further, "omissions are inevitable .... [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' " *Chandler,* 218 F.3d at 1313 (quoting *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)).  Courts conduct a highly deferential review of counsel's performance and " 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.' " *Id.* at 1314 (alteration in original) (quoting *Strickland,* 466 U.S. at 689-90, 104 S.Ct. at 2065-66).
>
> To establish prejudice, "there must be a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different." *Lynd,* 470 F.3d at 1315. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2056. "A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002). A petitioner must "affirmatively prove prejudice." *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067.

*Payne v. Allen*, 539 F.3d 1297, 1315 (11th Cir. 2008).

With respect to his trial counsel, the defendant has failed to establish either

16

deficient performance or that he suffered prejudice.  As noted previously, the defendant's trial counsel presented substantial arguments on the issue of unwarranted sentence disparities under 18 U.S.C. § 3553(a)(6).  In particular, they maintained that a minimal sentence was appropriate based upon comparisons of defendant's role and culpability to those of other HealthSouth defendants who pled guilty, as well by pointing out sentences imposed upon of a number of defendants convicted in this district, including in the Just For Feet investment fraud case and in the case of a former county sheriff and a local attorney convicted of election fraud conspiracy. (CR Doc. 131 at 24-29; CR Doc. 133 at 9-13; CR Doc. 142 at 108-109, 120-122). The defendant now contends that his counsel should have made arguments based upon sentences handed down to eight individuals in other cases that allegedly should have been presented at sentencing.  However, this court actually did consider two of the eight: the 46-month sentence handed down to James Brown and the 30-month sentence of Daniel Bayly, both of whom were Merrill Lynch employees involved in the Enron case.  (*See* CR Doc. 142 at 97-98).  Three of the other cited sentences, namely, the 72-month sentence of Jamie Olis, the 57-month sentence of Michelle Valencia, and the 26-month sentence of Greg Singleton, all involved in the Dynegy

case, had not been handed down when the defendant was sentenced in June 2006.[9]

Because no factual basis existed at the defendant's sentencing to assert arguments

based on the sentences of these other individuals, the defendant's trial counsel was

not ineffective for failing to present such information. *See Porter v. Wainwright*, 805

F.2d 930, 934 n.3 (11th Cir. 1986). This leaves only the sentences of three other

individuals from the same case, involving an Enron employee, Dan Boyle, sentenced

to 46 months, and two Merrill Lynch employees, William Fuhs and Robert Furst,

each sentenced to 37 months. While these three had been sentenced at the time of the

defendant's sentencing,[10] the failure of the defendant's trial counsel to advise the

court of them specifically does not approach constitutionally deficient performance.

Defendant's trial counsel made substantial arguments in connection with avoiding

unwarranted disparities under § 3553(a)(6), and, equally to the point, the defendant

has failed to demonstrate that any disparities between his sentence and these three

other individuals are actually "unwarranted" for purposes of 28 U.S.C. § 3553(a)(6).[11]

---

[9]Olis was originally sentenced in March 2004 to over 24 years imprisonment, but that sentence was vacated on appeal. *See United States v. Olis*, 429 F.3d 540 (5th Cir. 2005). He was resentenced on September 22, 2006, to 72 months. *See United States v. Olis*, 2006 WL 2716048 (S.D. Tex. 2006) (unpublished). Valencia and Singleton both received their sentences in August 2008. *See* http://www.chron.com/CDA/archives/archive.mpl?id=2008_4613403.

[10]Boyle, Fuhs and Furst were each sentenced on May 13, 2005. *See* http://www.chron.com/disp/story.mpl/special/enron/barge/3180226.html.

[11]Indeed, it would appear that the scope and effect of the fraudulent scheme at HealthSouth involving this defendant was of an entirely different order than the fraud for which Boyle, Fuhs, and Furst were convicted and sentenced. It was undisputed that the fraud at HealthSouth caused investors to lose at least approximately three hundred twenty-eight million dollars (*see* CR Doc. 142 at 51-52); *see also Martin*, 455 F.3d at 1231 & n.1; *McVay*, 447 F.3d at 1351-52, and the loss calculation evidence accepted by this court put the total losses for stockholders and bondholders at approximately $7 billion. (*See* CR Doc. 142 at 29, 81-84). By contrast, Boyle, Fuhs, and Furst were involved in a Nigerian barge scam that the sentencing

Indeed, the defendant has failed to make such a showing as to any of the eight individuals he cites. Rather, the defendant simply says that they all were "mid level individuals" who "also went to trial" and that they were sentenced to "significantly less time" than he was. (CV Doc. 2 at 3). But, again, "[a]pparent disparities in sentencing are an inevitable part of our criminal justice system," *McClesky,* 481 U.S. at 312, and the defendant does not offer any details regarding the particular offenses in these cases, the roles these other individuals played in the frauds, the amount of any ascribable losses, or the applicable Guidelines ranges. The defendant similarly argues that his counsel should have objected or otherwise pointed out to the court that it should not consider the sentences given to higher level executives with greater culpability. However, the question of this defendant's level of responsibility and culpability was fully argued and considered at sentencing, and the court was fully cognizant of the fact that some of the sentences from other fraud cases that it "considered" involved individuals that were at higher levels of corporate authority and culpability than this defendant.

Further, even assuming both that the information regarding the sentences of the other cited fraud defendants had been presented and that defense counsel had

---

district judge characterized as a relatively "inconsequential" fraud within the Enron overview, resulting in a monetary loss of only about $1.4 million. *See* http://www.chron.com/disp/story.mpl/special/enron/barge/3180226.html. For further details on that underlying scheme, see *United States v. Brown*, 459 F.3d 509 (5th Cir. 2006), *on remand sub nom. United States v. Bayly*, 2008 WL 899624 (S.D. Tex. 2008) (unpublished).

objected or otherwise pointed out that some of the other sentences considered by the court in connection with § 3553(a)(6) involved higher level executives with greater culpability, there is no reasonable probability that the result of the sentencing proceeding would have been different.  Again, the defendant's sentence was based upon this court's consideration of and weighing *all* of the § 3553(a) factors. *Williams*, 526 F.3d at 1323; *Clay*, 483 F.3d at 743.  This included consideration of potential disparities relative to fifteen other defendants in the HealthSouth cases and twenty-six defendants in a variety of other fraud-related cases.  (*See* CR Doc. 142 at 95-105).  Consideration of several additional individuals in other cases would have made no difference whatsoever.  Nor would any objection or argument by defense counsel to the effect that this defendant was not as culpable as some of the individuals sentenced in other cases.  Accordingly, the defendant suffered no prejudice from any alleged error by trial counsel.

The defendant also cannot establish either deficient performance or prejudice relative to the conduct of his appellate counsel.  As noted above, the defendant's trial counsel did not object to the defendant's sentence, so any attempt to argue a claim based upon unwarranted sentencing disparities under § 3553(a)(6) would have been barred on appeal.  *See United States v. Grimes*, 142 F.3d 1342, 1353 (11th Cir. 1998) (court of appeals generally will consider an argument made for the first time on

appeal only under the "plain error" doctrine to avoid manifest injustice).  Where

matters complained of were not preserved for review, appellate counsel is not

deficient in failing to attempt to raise such matters on appeal. *Jackson v. Dugger*, 931

F.2d 712, 715 (11th Cir. 1991); *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th

Cir. 1984).  Likewise, appellate counsel was not ineffective for failing to attempt

present to the Eleventh Circuit any information regarding any of the other would-be

comparators that was not presented below because such information would not have

been considered on appeal because it was not part of the trial record before the district

court. *See Newland v. Hall*, 527 F.3d 1162, 1191 (11th Cir. 2008).

Indeed, even if trial counsel had preserved the issue and done everything at

sentencing that the defendant now says they should have, the defendant has failed to

show that appellate counsel would have been ineffective for failing to argue that the

sentence imposed was excessive on the ground that it reflects unwarranted sentencing

disparities under § 3553(a)(6).  The Eleventh Circuit reviews a sentence only for

"reasonableness," under an abuse of discretion standard. *United States v. Brown*, 526

F.3d 691, 708 (11th Cir. 2008) (citing *Gall v. United States*, 552 U.S. ___, 128 S.Ct.

586, 597 (2007)).  In so doing, the court of appeals considers "the final sentence, in

its entirety, in light of the § 3553(a) factors." *United States v. Valnor*, 451 F.3d 744,

750 (11th Cir. 2006).  "'The weight to be accorded any given § 3553(a) factor is a

21

matter committed to the sound discretion of the district court[,]" and "[the court of appeals] will not substitute [its] judgment in weighing the relevant factors." *Williams,* 456 F.3d at 1363 (citations omitted). The court of appeals does "not apply the reasonableness standard to each individual decision made during the sentencing process; rather [it] review[s] the final sentence for reasonableness." *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2006). Further, if a sentence is within the Guidelines range, an appellate court may, but is not required to, apply a presumption of reasonableness. *United States v. Pugh*, 515 F.3d 1179, 1190 (11th Cir. 2008) (citing *Rita v. United States*, ___ U.S. ___, 127 S.Ct. 2456 (2007)); *see also United States v. Campbell*, 491 F.3d 1306, 1313-14 & n.8 (11th Cir. 2007); *United States v. Hunt*, 459 F.3d 1180, 1185 (11th Cir. 2006). Finally, a defendant "'bears the burden of establishing that the sentence is unreasonable in light of both [the] record and the factors and the factors in section 3553(a).'" *Brown*, 526 F.3d at 708 (quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)).

Given this highly-deferential standard of appellate review, this court's detailed analysis of all of the § 3553(a) factors, and the fact that the defendant's 96-month sentence was substantially below the 180 months specified by the Guidelines, it would be more than reasonable for appellate counsel to conclude that a claim like the defendant's here would have had no prospect for success in the Eleventh Circuit. *See,*

*e.g., Owens*, 464 F.3d at 1255-56 (rejecting claim that 60-month sentence for HealthSouth defendant who pled guilty was unreasonable for alleged failure of district court to consider unwarranted sentence disparities relative to other co-conspirators).   Ultimately, the defendant's appellate counsel raised a number of significant claims on appeal, and "[a]ppellate counsel is not ineffective for failing to raise claims 'reasonably considered to be without merit.'"   *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *see also Lambrix v. Singletary*, 72 F.3d 1500, 1507 (11th Cir. 1996) (appellate counsel's failure to raise any sentencing issues on appeal was not ineffective assistance of counsel, as failure was not out of ignorance but was product of informed belief that there were no meritorious sentencing issues); *Julius v. Johnson*, 840 F.2d 1533 (11th Cir. 1988) (appellate counsel's decision to winnow out weaker arguments from appellate brief does not constitute ineffective assistance of counsel).   The defendant has failed to show that any alleged error by appellate counsel constituted deficient performance or caused him to suffer prejudice.

Faring no better is the defendant's argument that he can avoid a procedural default on the theory that he could not raise his claim based upon allegedly unwarranted sentencing disparities under § 3553(a)(6) on direct appeal because the sentences of several would-be comparator defendants had not been finalized at the

time of his own sentencing.  As noted above, three of the eight sentences of the comparators cited by the defendant had not yet been imposed at the time of the defendant's own sentencing.  But in procedural default cases, the question is not whether legal developments or new evidence have made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.  *See Lynn*, 365 F.3d at 1235 & n.19; *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001). The defendant's instant claim based upon § 3553(a)(6) was clearly "available" to him at the time of his direct appeal, as the issue of sentencing disparities was heavily litigated at sentencing.  The fact that subsequent to the defendant's own sentencing three additional individuals were sentenced in other federal criminal fraud cases simply does not give rise to a new, previously unavailable claim.  The court concludes that the defendant's instant claim is procedurally defaulted.

## III.   CONCLUSION

Premised on the foregoing, the court concludes that the defendant's claim is not cognizable under 28 U.S.C. § 2255 and that, even assuming that it is, the claim has been procedurally defaulted because it could have been, but was not, raised on direct appeal.  Accordingly, the defendant's motions filed pursuant to 28 U.S.C. §§ 2255 and 2241 are due to be denied, and this action is due to be dismissed with prejudice. An appropriate order denying these motion will be entered contemporaneously

herewith.

     **DONE** this the 29th day of December, 2008.


                           **VIRGINIA EMERSON HOPKINS**
                           United States District Judge